UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRYSTAL TRASLAVINA GARCIA<br><br>                Petitioner,<br><br>v.<br><br>PATRICIA HYDE, Field Office Director, MICHAEL KROL, HSI New England Special Agent in Charge, and TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security,<br><br>                Respondents. | Case No. 1:25-cv-11513-LTS<br><br>**FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Crystal Traslavina Garcia is a Colombian national. She is married to a lawful permanent resident of the United States. When she entered the United States approximately one year ago, Petitioner was released on recognizance and placed into removal proceedings in Immigration Court. U.S. Immigration and Customs Enforcement ("ICE") has detained Petitioner and asserted that it can subject her to expedited removal—a process through which ICE may seek to immediately remove her without allowing her to see an immigration judge—even though she is still subject to pending removal proceedings which the immigration judge did not terminate, and even though she intends to pursue relief from removal in those proceedings.

2. Petitioner was unlawfully detained by federal immigration agents on May 27, 2025, when she appeared in Boston Immigration Court for a hearing.

1

3. At the hearing before Immigration Judge Donovan, Office of the Principal Legal Advisor ("OPLA") made an oral motion to terminate the proceedings against Petitioner. OPLA represented to the Immigration Court that Petitioner was amenable to Expedited Removal proceedings, a process with much narrower forms of relief available than those available to individuals in removal proceedings in Immigration Court. On information and belief, the government takes the position that people in expedited removal proceedings are not eligible for a bond hearing, but are rather mandatorily detained. *See* 8 U.S.C. § 1225.

4. After conferring with counsel, Petitioner objected to OPLA's oral motion to terminate the case. Petitioner wished to pursue her claims for relief in Immigration Court—an option that would not be available to her if her case was terminated and she was subjected to Expedited Removal. Immigration Judge Donovan issued an oral decision requiring OPLA to file a written motion to terminate proceedings and giving Petitioner a chance to file an opposition to OPLA's motion. Immigration Judge Donovan scheduled the next hearing for May 12, 2026. Thus, Petitioner remains in removal proceedings in Immigration Court.

5. Following the hearing, Petitioner was taken into custody while conferring with immigration counsel in the hallways of Boston Immigration Court. When immigration counsel inquired about the basis for her arrest, ICE officers indicated that she would be taken into custody and subjected to Expedited Removal. When immigration counsel offered proof that Petitioner was still in removal proceedings in Immigration Court and therefore not subject to Expedited Removal, ICE stated that it was under orders to take individuals, including Petitioner, into custody even when the Immigration Judge had not yet ruled to terminate proceedings.

6. On May 27, 2025, the same day as her arrest, Petitioner commenced this *habeas* action. Within one hour of the filing, this Court issued an Order and Stay of Transfer or Removal which, *inter alia*, restricted Respondents' ability to transfer Petitioner outside of Massachusetts.

7. On June 2, 2025, this Court granted Respondents' emergency motion, assented to by Petitioner, to transfer her to ICE's detention facility in Burlington, VT ("Vermont Detention Center"). The parties agreed in such filing, and the Court so ordered, that, i*nter alia*, this Court would maintain jurisdiction and venue in the action, and that Petitioner would not be transferred from the Vermont Detention Center without the permission of this Court.

8. Petitioner's transfer to the Vermont Detention Center on June 2, 2025 followed six days and nights of detention in a hold room in ICE's field office located at 1000 District Avenue, Burlington, Massachusetts (the "Massachusetts Field Office"). As detailed below, Petitioner was subject to deplorable, inhumane, and cruel conditions and treatment at ICE's Massachusetts Field Office.

9. Petitioner remains confined to the Vermont Detention Center as of June 5, 2025.

## JURISDICTION

10. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question).

11. Venue is proper because Petitioner resides and was detained in Boston, MA, and on information and belief is detained in the District of Massachusetts.

## PARTIES

12. The Petitioner Crystal Traslavina resides in Revere, Massachusetts. She is a Colombian national.

13. Respondent Patricia Hyde is the New England Field Office Director for U.S. Immigration and Customs Enforcement.

14. Respondent Michael Krol is the New England Special Agent in Charge for Homeland Security Investigations for U.S. Immigration and Customs Enforcement.

15. Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement.

16. Respondent Kristi Noem is the U.S. Secretary of Homeland Security.

17. All respondents are named in their official capacities.

## FACTS

18. On May 27, 2025, the same day ICE detained Petitioner as she left her Immigration Court proceeding in Boston, ICE brought her to its Massachusetts Field Office, booked her, then placed her in a "hold room."

19. On the morning of May 28, 2025, the Court ordered that "[b]y close of business today, May 28, 2025, the respondent shall file a status report identifying the location where the petitioner is presently detained, **so that her counsel may locate and confer with her**" (emphasis added). The Respondent confirmed before close of business on May 28 that Petitioner was detained at ICE's Massachusetts Field Office.

20. On May 29, 2025, at approximately 3 p.m., Petitioner's immigration attorneys, Jill Seeber, Esq., and Alexandra Peredo Carroll, Esq., went to the Massachusetts Field Office to see Petitioner. They identified themselves to the ICE officer on duty as counsel for Petitioner

4

and requested to see her. The officer indicated that ICE does not allow lawyer visitations with clients held at the Massachusetts Field Office.

21. Petitioner's counsel protested the ICE officer's refusal to allow Petitioner the ability to see or meet with her counsel. The ICE officer stated in reply words to the effect of "You should have thought about that before preventing her transfer out of state" via this Court's Stay of Transfer/Removal Order.

22. Based both on its aggressive tone and its content, the officer's comment was intended to convey his belief that Petitioner had forfeited her right to confer with counsel because she had sought redress from the courts contesting her detention.

23. During this attempted counsel visit on May 29, 2025, ICE officials at the Massachusetts Field Office also refused to provide the name of Petitioner's case manager or Deportation Officer, despite multiple requests.

24. On May 30, 2025 at approximately 3:50pm, Attorneys Seeber and Peredo Carroll returned to the Burlington Field Office and were allowed to meet with Petitioner after intervention of an Assistant United States Attorney.

25. Petitioner's counsel were brought into an interview room where Petitioner was already seated and was speaking with another ICE officer. Petitioner was crying and was visibly upset and was explaining to the officer that she had pain in her legs and that her legs were swollen. Petitioner was shivering and indicated that she was very cold.

26. Counsel were then allowed to meet with Petitioner in the interview room, while the ICE officers waited outside.

**Conditions at ICE's Massachusetts Field Office**

27. As noted, Petitioner spent six days and nights confined in the Massachusetts Field Office's "hold room." While she is no longer at that location, having been transferred by agreement of the parties and the Court's permission to the Vermont Detention Center, Petitioner hereby makes a record of the suffering she endured at the Massachusetts Field Office. It is important to bring this to the Court's attention.

28. Petitioner was provided with no bed or mattress to sleep on since the evening of May 27, 2025 when she arrived at the Massachusetts Field Office. She was given only a mylar blanket (described by her as an aluminum blanket). She was in chronic pain from sleeping, or attempting to, on the hard cell floor.

29. Petitioner recently had surgery and was advised by her doctor it was important she walk to prevent swelling in her limbs. She showed counsel during the May 29 visit that her arms and legs were swollen. During her first night at the Massachusetts Field Office, she had been allowed permission to walk in the hallways but she had not been allowed to do that again after her first night there.

30. Petitioner was not given access to a shower, nor was she allowed to brush her teeth during her six-day detention at the Massachusetts Field Office. She was kept in the "hold room" cell that measures approximately eight (8) feet by ten (10) feet in size.

31. There is a toilet in the hold room but no barrier between the toilet and anything else in the room, so there was no privacy in the use of the toilet during Petitioner's detention there.

32. Petitioner did not have access to soap or water to wash her hands after using the bathroom in the hold room.

33. During her detention in the hold room, she shared the space with two other women from

time to time. The room is so small that only two of the women could lie down on the floor and the third had to be sitting up, next to the toilet.

34. The meals provided to Petitioner during her detention at the Massachusetts Field Office consisted of approximately a half-cup of oatmeal in the morning for breakfast, about a half-cup (or five tablespoons) of pasta for lunch, and approximately a half-cup of rice mixed with soup, which Petitioner described as having the same consistency as wet dog food, for dinner. To drink, she was given three small water bottles each day – one bottle of water with each meal.

35. Petitioner's husband dropped off a bottle of Tylenol or ibuprofen for her at the Massachusetts Field Office, but ICE officials only allowed her to take two tablets and nothing else. They kept the bottle and denied her request for additional Tylenol or ibuprofen even though she complained she was in pain from the conditions in the hold room.

36. Petitioner did not see a doctor or receive medical care during her detention at the Massachusetts Field Office.

37. On May 29, 2025, Attorneys Seeber and Peredo Carroll briefly spoke with one of the ICE officers after their meeting with Petitioner and asked if they could provide her with a blanket they had in the car, as Petitioner reported being very cold and ICE deprived of her of an actual blanket (as opposed to the aluminum one). The ICE officer indicated that they had blankets available and that all Petitioner had to do was ask for a blanket if she wanted one. They provided Petitioner with a sweatshirt. On information and belief, the Petitioner was never provided a blanket during her stay, besides the aluminum one.

38. On Monday, June 2, 2025, Benjamin Tymann, Esq., Counsel for Petitioner in this action, met with her at the Massachusetts Field Office.

39. During that meeting, Petitioner described the conditions of her detention to Attorney Tymann. She was still sleeping on the floor and still did not have access to a bed, and had been given no blanket except the aluminum one. She stated that they were still giving her the same three meals as described above, except that over the weekend she had been given a cheeseburger and an apple.

40. At approximately 2:00am or 3:00am on Monday, June 2, 2025, Petitioner and the other two women crammed into the hold room were all moved to a larger cell that held about 10 to 12 other women. Like in the smaller hold room, the toilet was in the middle of the room, so the women used the aluminum blanket to cover each other as they used the toilet so they could have a little bit of privacy.

41. When counsel asked additional questions about the conditions of her detention during the attorney-client visit on June 2, Petitioner stated she was nervous about speaking more because there was one ICE officer who had been mistreating her and she was afraid that if she shared more, the conditions would get worse.

42. This same officer had stated to her on more than occasion during her detention at the Massachusetts Field Office that it was the fault of her lawyers and the Court that she was still at the Massachusetts Field Office and enduring the conditions there.

43. This same ICE officer, whose name is unknown to Petitioner, put up her photograph on the door of the hold room and told the other officers not to give Petitioner anything because she had already been asking for too much. Petitioner was noticeably upset during the June 2 counsel interview when she spoke about this and cried while she was describing the

conditions of the hold room.

44. Petitioner's counsel made a direct request to ICE officials on duty at the Massachusetts Field office on June 2, 2025, to be able to see the hold room. ICE officials denied counsel's request, citing "security" concerns.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Fifth Amendment Right to Due Process

45. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

46. Petitioner is currently being detained by federal agents in the Vermont Detention Facility without cause and in violation of her constitutional rights to due process of law.

47. On information and belief, Petitioner is currently being detained and subjected to Expedited Removal in violation of her constitutional right to due process of law.

48. Petitioner cannot be detained for, or subjected to, Expedited Removal because she is currently in removal proceedings in Immigration Court.

49. Challenges to "confinement and removal" under the Expedited Removal statute fall within the "core" of the writ of habeas corpus. *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1006-07 (2025); *cf. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, (2020) (holding attempt "to obtain additional administrative review of his asylum claim" after Expedited Removal order was outside the "core" of habeas relief).

50. Accordingly, to the extent 8 U.S.C. § 1252(e)(2) purports to preclude habeas review of whether Petitioner is ineligible for detention and removal via Expedited Removal due to her being in active removal proceedings in Immigration Court, that limitation violates the Suspension Clause and is void and without effect.

51. Indeed, if there were no judicial review whatsoever of the immigration agencies' determinations that someone is being unlawfully subject to Expedited Removal, then the immigration agencies would be free to find that essentially any arrested noncitizen without status is subject to Expedited Removal, in direct violation of the procedures and safeguards required for removal proceedings by the laws and Constitution of the United States.

## COUNT TWO
## Release on Bail Pending Adjudication

52. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

53. Federal courts sitting in habeas possess the "inherent power to release the petitioner pending determination of the merits." *Savino v. Souza*, 453 F. Supp. 3d 441, 454 (D. Mass. 2020) (quoting *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam)); see also *Da Graca v. Souza*, 991 F.3d 60 (1st Cir. 2021). Federal courts "have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in the criminal habeas case." Id. (quoting *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001)). "A court considering bail for a habeas petitioner must inquire into whether the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." Id. (quoting *Mapp*, 241 F.3d at 230) (cleaned up).

54. This petition raises constitutional and statutory claims challenging the Petitioner's detention. Her detention prejudices her ability to adequately litigate her bond proceeding by limiting her access to counsel and evidence.

## **PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume and maintain jurisdiction over this matter;

(2) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

(3) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately; and

(4) Grant any further relief this Court deems just and proper.

Respectfully submitted,

**CRYSTAL TRASLAVINA GARCIA,**

By her attorney,

/s/ Benjamin B. Tymann
Benjamin B. Tymann
BBO # 652011
Tymann, Davis & Duffy, LLP
45 Bromfield Street, 6th Floor
Boston, MA 02108
Tel. 617.933.9490

Dated: June 5, 2025