UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRYSTAL TRASLAVINA GARCIA,<br><br>Petitioner,<br><br>v.<br><br>PATRICIA HYDE, Field Office Director,<br>MICHAEL KROI, HIS New England<br>Special Agent in Charge,<br>TODD LYONS, Acting Director U.S.<br>Immigration and Customs Enforcement,<br>And<br>KRISTI NOEM, U.S. Secretary of<br>Homeland Security,<br><br>Respondents. | C.A. No. 1:25-CV-11513-LTS |

### RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241

The Respondents,[1] by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to the Petition for Writ of Habeas Corpus filed by the Petitioner pursuant to 28 U.S.C. §2241 ("Petition"). The Respondents respond to the Petition as contemplated by Rules 4 and 5 of the Rules Governing Section 2254 Cases in the United States District Courts.[2]

---

[1] Since the Petitioner is now detained at the Chittenden Regional Correctional Facility in Vermont, the Petitioner's immediate custodian, Theresa Messier, Superintendent of the Chittenden Facility, should be substituted as the only named Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004): *Vasquez v. Reno,* 233 F.3d 688, 695 (1st Cir. 2000). Patricia Hyde and the other named Respondents should be dismissed, as the Court lacks jurisdiction over supervisory officials. *See Vasquez*, 233 F.3d at 696 (explaining that supervisory officials are not proper respondents to habeas actions, holding that "as a general rule, the Attorney General is neither the custodian of such an alien in the requisite sense nor the proper respondent to a habeas petition.").

[2] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

1

**INTRODUCTION**

The Petitioner's detention by U.S. Immigration and Customs Enforcement ("ICE") is fully supported by the Immigration and Nationality Act ("INA"), its implementing regulations, and the Constitution. ICE is detaining the Petitioner pursuant to its statutory authority contained at 8 U.S.C. § 1225(b), because the Petitioner is an "applicant for admission" who has not shown her admissibility into the United States clearly and beyond a doubt and must be detained during the pendency of her removal proceedings. ICE has also determined that the Petitioner is eligible for expedited removal, given that she is an applicant for admission to the United States who is inadmissible to the United States under 8 U.S.C. § 1182(a)(7) (lack of valid documentation for admission) and has been present in the United States for less than two years.[3] In either case, whether the Petitioner remains in the formal removal proceedings which are still pending; or if she is later processed for expedited removal, her detention is mandatory under 8 U.S.C. § 1225(b).

The Petitioner, who is a Colombian national, (Petition ¶ 1), states that when she entered the United States about a year ago, she was released on recognizance and placed into removal

---

[3]The Immigration and Nationality Act ("INA") authorizes expedited removal "[i]f an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(c) or 1182(a))(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).
   Expedited removal —a mechanism for swiftly removing certain aliens from the United States without a hearing before an immigration judge – was created by Congress in 1996. Since then, the Attorney General or the Secretary of Homeland Security has had, in their "*sole and unreviewable* discretion," the authority to "designate" as subject to expedited removal certain classes of unlawfully present aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii) (emphasis added). In keeping with the statute, on January 21, 2025, the then-Acting DHS Secretary designated as subject to expedited removal certain aliens encountered anywhere in the United States within two years of illegally crossing the border. *See Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025).

2

proceedings in Immigration Court. *Id.* The Petitioner thus admits that she has been in the United States for less than two years. In her Petition, she does not allege any ground upon which she has legal status to remain in the United States; and she also does not allege that she has a fear of persecution or ever expressed an intention to apply for asylum.

Instead, the Petitioner claims that her Fifth Amendment right to due process was violated when she was detained and subjected to expedited removal while her removal proceedings before the Boston Immigration Court were still pending. (Petition ¶ 1). The Petitioner argues that because she was still in removal proceedings in Immigration Court, she was not subject to expedited removal.

However, the Petitioner's challenge to expedited removal is premature. An expedited removal order has not issued yet. Accordingly, the expedited removal process has not yet begun, and the Petitioner is not being "subjected to expedited removal" at this time. Currently, the Petitioner is still in formal removal proceedings before the Immigration Court under 8 U.S.C. §1229a. Although ICE has made a motion to terminate those removal proceedings, the Immigration Court is receiving briefing on the issue, and the removal proceedings are still ongoing. Because the Petitioner is still before the Immigration Court in her removal proceeding there, if she seeks to challenge her detention, she should pursue a bond hearing before the Immigration Court; and if denied, she should appeal to the Board of Immigration Appeals. This Court should not review her challenge to her detention until she has exhausted her administrative remedies.

Furthermore, even if the Court decided to decide the Petitioner's Due Process claim, that claim should be denied. As an alien seeking admission to the United States, the Petitioner's due process rights are co-extensive with the procedural protections afforded by the statutes, which she has received.

3

## BACKGROUND

**A. Legal Background for Aliens Seeking Admission to the United States.**

In exercising its plenary power over immigration, Congress delegated to the Secretary of Homeland Security the responsibility for "[s]ecuring the borders," enforcing the immigration laws, and "control[ling] and guard[ing] the boundaries and borders of the United States against the illegal entry of aliens." 6 U.S.C. §§ 202(2) & (3); 8 U.S.C. § 1103(a)(5).

Pursuant to 8 U.S.C. § 1225(a)(1), an alien present in the United States who has not been admitted is known as an "applicant for admission." An "applicant for admission" is defined, in relevant part, as an alien "who arrives in the United States [] whether or not at a designated port of arrival." 8 U.S.C. § 1225(a)(1). An alien, like the Petitioner, "who tries to enter the country illegally is treated as an 'applicant for admission.'" *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (quoting 8 U.S.C. § 1225(a)(1)).

Per Section 1225(a)(3), all applicants for admission are subject to inspection by immigration officers to determine if they are admissible to the United States. The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); *see also* 8 C.F.R. § 1235.1 (setting forth inspection procedures). Section 1225(b)(1) provides for the inspection of applicants for admission.

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104208, Tit. III, § 302(a), 110 Stat. 3009-579, Congress amended Section 1225(b) to add "expedited removal" procedures to "streamline[] rules and procedures . . . to make it easier to deny admission to inadmissible aliens," while ensuring that there is "no danger that an alien with

4

a genuine asylum claim will be returned to persecution." H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 157–58 (1996) (House Report).  After IIRIRA, Section 1225(b) provides that, if an immigration officer determines that an alien "who is arriving in the United States" lacks valid documents or is inadmissible due to fraud, the officer "shall order the alien removed from the United States without further hearing." 8 U.S.C. § 1225(b)(1)(A)(i). Per Section 1225(b)(1)(A)(iii)(II), the expedited removal process can apply to an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that [the] alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."[4]

Pursuant to 8 U.S.C. § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240."[5]  8 U.S.C. § 1225(b)(2)(A).  In *In Matter of Q. Li*, 29 I&N Dec. 66 (BIA

---

[4] If, however, the alien expresses a fear of persecution or torture, the expedited removal order is held in abeyance and an asylum officer must determine whether the alien has a credible fear. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii) & (B); 8 C.F.R. §§ 208.30, 235.3(b)(4). The alien "shall be detained pending a final determination of credible fear of persecution." 8 U.S.C. 1225(b)(1)(B)(iii)(IV).  The Supreme Court has confirmed that this statutory mandate for detention extends for the entirety of removal proceedings. *Jennings v. Rodriguez,* 583 U.S. 281, 302 (2018) ("[Section] 1225(b)(1) . . . mandate[s] detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings begin." (emphasis added)).  This is because Section 1225(b)(1)(B)(iii)(IV) provides for mandatory detention of individuals who have not established a credible fear until removal from the United States ("Any alien subject to the procedures under this clause *shall be detained* pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.") (emphasis added).

[5] Section 240 of the INA, codified at 8 U.S.C. § 1229a, refers to the full removal proceedings that the Petitioner is currently subject to, before the Immigration Court.

2025), the Board of Immigration Appeals ("BIA") noted that "DHS may place aliens arriving in the United States in either expedited removal proceedings under section 235(b)(1) of the INA, 8 U.S.C. § 1225(b)(1), or full removal proceedings under section 240 of the INA, 8 U.S.C. § 1229a." For both expedited removal proceedings and full removal proceedings, the BIA held that 8 U.S.C. § 1225(b)(2)(A) mandates detention "until removal proceedings have concluded." *Id.* at 68 (quoting *Jennings v. Rodriguez*, 538 U.S. 281, 299 (2018)). The BIA stated, "we hold that an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), and is ineligible for any subsequent release on bond under section 236(a) of the INA, 8 U.S.C. § 1226(a)." *Id.* at 69. The BIA recognized that "The only exception permitting the release of aliens detained under section 235(b) of the INA, 8 U.S.C. § 1226(b), is the parole authority provided by 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A)." *Id.* at 69 (citing *Jennings*, 583 U.S. at 300).

### B. Petitioner's Immigration History.

Petitioner is a native and citizen of Colombia. (Declaration of Keith M. Chan ("Chan Decl.") ¶ 7). On March 30, 2024, the Petitioner entered the United States via the southern border. (Chan Decl. ¶ 8). At the time of her application for admission, she did not present any valid entry documents. (Chan Decl. ¶ 8).

The Petitioner was detained without a warrant. (Chan Decl. ¶ 9). U.S. Customs and Border Protection ("CBP") issued a Notice to Appear under 8 U.S.C. § 1182(a)(6)(A)(i). (Chan Decl. ¶ 9). She was released on an Order of Recognizance ("OREC"). (Chan Decl. ¶ 9). She was not admitted or paroled after inspection by an immigration officer. *Id.*

On April 1, 2024, the Boston Immigration Court received the Notice to Appear. (Chan

6

Decl. ¶ 10).   On May 27, 2025, an ICE attorney orally moved to dismiss the Petitioner's immigration proceedings at her scheduled removal hearing in immigration court.   (Chan Decl. ¶ 11).   The immigration judge continued the hearing until May 20, 2026.   *Id.*

On May 27, 2025, ICE detained the Petitioner pursuant to its authority under 8 U.S.C. § 1225(b).   (Chan Decl. ¶ 12).   The Petitioner was initially detained at the ICE field office in Burlington, Massachusetts.    (Chan Decl. ¶ 13).   On June 3, 2025, the Petitioner was transferred to the Chittenden Regional Correctional Facility, 7 Farrell Street in South Burlington, Vermont 05403.   (Chan Decl. ¶ 14).

To date, ICE has not issued an expedited removal order.   (Chan Decl. ¶ 15).

On May 27, 2025, the Petitioner filed the instant Petition, claiming that she had been unlawfully detained by federal immigration agents on May 27, 2025, when she appeared in Boston Immigration Court for a hearing; and she requests to be released.   (ECF Doc. 1).   On May 27, 2025, this Court issued an Order Concerning Service fo Petition and Stay of Transfer or Removal.   (ECF Doc. 4).   The Order directed that Petitioner not be transferred to another district unless the government provides 72 hours advance written notice of such intended move.   *Id.*

By Electronic Order of May 28, 2025, the Court directed the Respondents to file a status report identifying the location where the petitioner is presently detained.   (ECF #5).   The Respondents filed such status report on May 28, 2025, advising that the Respondent was located at the ERO's Burlington Field Office- Boston Hold Room, at 1000 District Avenue in Burlington, MA because of the lack of an appropriate ICE facility for women in Massachusetts.  (ECF Doc. 8).

On June 2, 2025, the Respondents filed an Emergency Assented-To Motion for Transfer

7

of the Petitioner to the Chittenden Regional Correctional Facility 7 Farrell Street South Burlington, VT 05403, ("Chittenden Facility"), asking that the transfer of the Petitioner be allowed to take place as soon as possible given that a bed had opened up at the Chittenden Facility. The Court allowed the Motion by Order of June 2, 2025. (ECF #12).

On June 3, 2025, the Petitioner was transferred to the Chittenden Facility. (Chan Decl. ¶ 13). To date, an expedited removal order has not yet issued. (Chan Decl. ¶ 14).

## ARGUMENT

### A. The Petitioner Properly Detained under 8 U.S.C. § 1225(b)

The Petitioner argues that she "cannot be detained for, or subjected to, Expedited Removal, because she is currently in removal proceedings in Immigration Court." (Petition ¶ 18). However, the Petitioner is not yet in expedited removal proceedings, as no expedited removal order has issued. She is still in formal removal proceedings before the Immigration Court, and she is properly detained under 8 U.S.C. § 1225(b)(2)(A), which mandates that she remain in detention during the pendency of her removal proceedings.

Pursuant to 8 U.S.C. § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240." 8 U.S.C. § 1225(b)(2)(A).

In the present case, the Petitioner falls squarely within the ambit of Section 1225(b)(2)(A)'s mandatory detention requirement. Based on the facts presented by both parties, the Petitioner is an alien who is an "applicant for admission" to the United States. The Petitioner is an alien "who has not been admitted" to the United States and not clearly and beyond a doubt entitled to be admitted, given that the Petitioner "has not affirmatively shown, to the satisfaction

of an immigration officer, that [she] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II).  Indeed, the Petitioner is inadmissible per 8 U.S.C. § 1182(a)(7) in that she lacks proper documents to demonstrate admission to the United States.   Thus, the Petitioner is properly detained subject to 8 U.S.C. § 1225(b), which mandates that she remain detained "until removal proceedings are concluded." *Jennings*, 583 U.S. at 299.

To the extent that the Petitioner challenges her detention by claiming that her detention is not under 8 U.S.C. § 1225(b) (which mandates detention) but rather under 8 U.S.C. § 1226(a) (discretionary detention), such an argument fails.  *In Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), the Board of Immigration Appeals held that mandatory detention under 8 U.S.C. § 1225(b) applies to all "applicant[s] for admission," whether they are placed in expedited removal proceedings or in full removal proceedings under 8 U.S.C. § 1229a.  *Id.* at 67-68.

In any event, if the Petitioner seeks to press a challenge to her detention on this or any other ground, the proper forum is the Immigration Court, where she should seek a bond hearing and then if needed, she should appeal to the Board of Immigration Appeals; given that the Petitioner is still in ongoing formal removal hearings before the Immigration Court.  Because the Petitioner has not yet exhausted her administrative remedies, this Petition is premature, and this Court should decline review the challenge to her detention.  As the First Circuit has explained in the immigration bond hearing context, "[g]enerally speaking, a plaintiff's failure to exhaust "her administrative remedies precludes her from obtaining federal review of claims that would have properly been raised before the agency in the first instance." *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021).  While there is no statutory mandate to exhaust a claim for release that could be made to an Immigration Judge prior to presenting such claim to the district court, common-law

9

exhaustion "allows an agency the first opportunity to apply its expertise and obviates the need for judicial review in cases in which the agency provides appropriate redress." *Id.* at 256 (cleaned up) (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175–76 (1st Cir. 2016)). Here, Petitioner can seek release from detention though a bond hearing. She can appeal a bond decision to the BIA if necessary. Because Petitioner failed to exhaust administrative remedies, the Court should decline to exercise habeas jurisdiction.

### B. Petitioner's Due Process Claim Is Meritless

The Petitioner claims that her current detention is "without cause" and "in violation of her constitutional rights to due process of law." (Petition ¶ 16). This argument fails. The cause of her detention is that the Petitioner is subject to mandatory detention until her removal proceedings have concluded under 8 U.S.C. § 1225(b)(2)(A), as set forth above.

Plaintiff appears to argue that because her removal proceedings before the Immigration Court were ongoing, that she expected to remain released on her own recognizance. However, an "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 n. 12 (1983).

The Supreme Court has held that applicants for admission such as Petitioner are only entitled to the protections set forth by statute and that "the Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140.

The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of foreign nationals and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). Pursuant to that longstanding doctrine, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens

10

is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). The broad scope of the political branches' authority over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004). Accordingly, "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

The Supreme Court has explained that applicants for admission lack any constitutional due process rights with respect to admission aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Mezei*, 345 U.S. at 212, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination". *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an individual who illegally crosses the border—like Petitioner—is an applicant for admission and "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 139-40.

As explained by the Supreme Court, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country …". *Thuraissigiam*, 591 U.S. at 139. Stated further, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). The Court held that this same "threshold" rule applies to individuals, like Petitioner, who are apprehended after trying "to enter the country illegally" since by statute, such individuals are also defined as applicants for admission. *Id.* at 139-40. Treating such an individual in a more

11

favorable manner than an individual arriving at a port of entry would "create a perverse incentive to enter at an unlawful rather than a lawful location" and therefore the Supreme Court rejected the argument that an individual who "succeeded in making it 25 years into U.S. territory before he was caught" should be entitled to additional constitutional protections. *Id.* at 140.

Instead, applying the "century-old rule regarding the due process rights of an alien seeking initial entry[,]" the Court explained that aliens arrested after crossing the border illegally, such as Petitioner, have "only those rights regarding admission that Congress has provided by statute." *Id.* at 140. The Court was clear: "the Due Process Clause provides nothing more" than the procedural protections set forth in 8 U.S.C. § 1225 that allow an individual to seek protection from removal if he fears return to his home country and also seek parole from the agency. *Id.*

The Supreme Court's decision in *Thuraissigiam* is instructive. In relevant part, *Thuraissigiam* concerned a due process challenge raised by an alien apprehended 25 yards from the border, which he crossed illegally. 591 U.S. at 139. DHS detained and processed him for expedited removal because he lacked valid entry documents. *Id.* at 114. An asylum officer then determined that Mr. Thuraissigiam lacked a credible fear of persecution. *Id*. Mr. Thuraissigiam petitioned for a writ of habeas corpus, asserting a fear of persecution and requesting another opportunity to apply for asylum. *Id.*

In its decision, the Supreme Court delineated the boundaries of due process claims that can be made by applicants for admission. Specifically, the Court held that for such aliens stopped at the border, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Id.* at 131 (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)); *see also Guerrier v. Garland*, 18 F.4th 304, 313 (9th Cir. 2021) ("In concluding that Thuraissigiam's due process rights were not violated, the

12

Supreme Court emphasized that the due process rights of noncitizens who have not 'effected an entry' into the country are coextensive with the statutory rights Congress provides.").

The U.S. Court of Appeals for the First Circuit also held that detention of an alien seeking admission to the United States does not violate due process in *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987). In that case, the Court explained that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress." *Id.* The appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum." *Id.*

This Court should apply the "century-old rule" reaffirmed in *Thuraissigiam* and conclude that Petitioner's due process rights are coextensive with the rights provided him under statute. Here, the law provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240." 8 U.S.C. § 1225(b)(2)(A). For the reasons set forth above, the Petitioner is subject to mandatory detention under this statute.

Moreover, mandatory detention is warranted under 8 U.S.C. § 1229a whether the Petitioner remains in ongoing removal proceedings or is later processed for expedited removal.. *See Matter of Q. Li*, 29 I&N Dec. 66, 67 ("'in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and

13

beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 240.'" (emphasis added) (quoting 8 U.S.C. § 1235(b)(2)(A)).  ICE's decision to place an alien arriving in the United States in either expedited removal proceedings under 8 U.S.C. § 1225(b)(1), or full removal proceedings 8 U.S.C. § 1229a is discretionary. However, ICE's decision to detain or release aliens deemed applicants for admission, is not. "For those placed in expedited removal proceedings who are referred to an Immigration Judge for consideration of their asylum application. . . 8 U.S.C. § 1225(b)(1)(B)(ii), requires detention until the final adjudication of the asylum application." *Q .Li*, 29 I&N Dec. at 68 (citing *Matter of M-S-*, 27 I&N Dec. 509, 516 (A.G. 2019)). "Likewise, for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section . . . 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'"  *Q. Li*, 29 I&N Dec. at 68 (quoting *Jennings*, 583 U.S. at 299). Thus, even if the Court was not barred from reviewing Petitioner's claim under 8 U.S.C. § 1252(a)(2)(A), her claim that her current detention is "without cause" and "in violation of her constitutional rights to due process of law" is without merit and should be dismissed.

      Finally, to the extent that the Petitioner challenges her present detention as a due process violation on the ground that CBP previously released her on an Order of Recognizance, this argument fails.  Under 8 U.S.C. § 1226(b), the Attorney General "*at any time* may revoke a bond or parole "and rearrest and detain the alien   8 U.S.C. § 1226(b) (emphasis added).  In other words, by statute, the government can revoke bond or parole for an alien, at any time, for any reason or no reason at all. Here, ICE's decision to rearrest and detain the Petitioner under 8 U.S.C. § 1225(b)(2)(A), a statute which mandates her detention until removal, falls squarely within its authority under 8 U.S.C. § 1226(b).  Thus, Petitioner cannot claim a due process violation arising

from the fact that she is detained despite having earlier been released on her own recognizance. That earlier release order could have been revoked for any (or no) reason at all, and here it was revoked because Petitioner is subject to mandatory detention under 8 U.S.C. 1235(b)(2)(A).

For all of these reasons, Petitioner's due process claim should be denied.

## CONCLUSION

For the foregoing reasons, the Petition and the relief requested therein should be denied.

Respectfully submitted,

                                                LEAH B. FOLEY
                                                United States Attorney

Dated: June 5, 2025                By:   */s/ Shawna Yen*
                                                      Shawna Yen
                                                      Assistant U.S. Attorney
                                                      U.S. Attorney's Office
                                                      John J. Moakley U.S. Courthouse
                                                      1 Courthouse Way, Suite 9200
                                                      Boston, MA 02210
                                                      Tel.: 617-748-3100
                                                      Email: Shawna.Yen@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: June 5, 2025                By:   */s/ Shawna Yen*
                                                      SHAWNA YEN
                                                      Assistant United States Attorney