**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CRYSTAL TRASLAVIÑA GARCIA | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-11513-LTS |
| | ) | |
| PATRICIA HYDE, Field Office Director, | ) | |
| MICHAEL KROL, HSI New England Special | ) | |
| Agent in Charge, and TODD LYONS, Acting | ) | |
| Director U.S. Immigrations and Customs | ) | |
| Enforcement, and KRISTI NOEM, U.S. Secretary | ) | |
| of Homeland Security, | ) | |
| | ) | |
| Respondents. | ) | |

## PETITIONER'S REPLY TO RESPONDENTS' MEMORANDUM IN OPPOSITION TO FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS

On May 27, 2025, United States Immigration and Customs Enforcement ("ICE") arrested and detained Crystal Traslaviña Garcia as she left a Boston Immigration Court hearing at which the Immigration Judge had just denied the government's motion to terminate her immigration proceedings and place her in expedited removal proceedings. In addition to attending this court appearance, Ms. Traslaviña Garcia had followed to a tee all requirements of the conditional parole U.S. Customs and Border Control ("CBP") had imposed on her more than a year earlier when she entered the country and was released on personal recognizance. She has no criminal record here or elsewhere, poses no danger to society, and has shown through her multiple ICE check-ins and court appearances she is not a flight risk. Yet ICE agents, citing marching orders from higher-ups, came to the courthouse in a team of at least five to arrest her anyway. They completed the arrest even after being informed by an attorney present that the Immigration Judge had just ruled that Ms. Traslaviña Garcia was to remain in conventional removal proceedings – proceedings over which that court, not ICE, has jurisdiction.

1

Since this wrongful arrest, ICE and Respondents' attempted justifications for snatching Ms. Traslaviña Garcia from a courthouse hallway and keeping her jailed have pin-balled from one fallacious ground to another. First, the arresting agents in the hallway claimed she was being detained in order to be subject to expedited removal. But the Immigration Judge had just rejected that course of action, forcing Respondents to concede in their recent court filings she "is not being subjected to expedited removal at this time." Next, in a written report prepared by ICE the same day they wrote out the arrest warrant – the day *after* the arrest – the agency took a stab at an argument that there had been a "change in circumstances" in her case, that is, the government's "enter[ing]" of the oral motion in Immigration Court to terminate her removal proceedings. But that justification made no sense because, as the arresting agents were informed as they surrounded Ms. Traslaviña Garcia, the Immigration Judge had just denied that motion and preserved the status quo of the case's circumstances. Respondents have abandoned that second rationale as well, but their third is even worse – and shocking to the rule of law. Respondents now say that noncitizens such as Ms. Traslaviña Garcia who are under the jurisdiction of the Immigration Courts, are not subject to expedited removal, have no changed circumstances, and are abiding by all terms of their conditional parole may be put in government detention for "any (or no) reason."

The government arrested Ms. Traslaviña Garcia with no legal basis and continues to detain her in the absence of law. Ms. Traslaviña Garcia, who also submits a supporting declaration detailing the dreadful conditions of her detention, respectfully requests this Court grant her immediate release from custody.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Ms. Traslaviña Garcia's Release on Personal Recognizance, Conventional Removal Proceedings Under INA § 240, and Adherence to Parole Conditions

Ms. Traslaviña Garcia is a 34-year old Colombian national who entered the United States without inspection at or near Tecate, California, on or about March 30, 2024, and was then detained

by CBP. *See* Department of Homeland Security ("DHS") Notice to Appear ("NTA," a true copy of which is attached hereto at ***Exhibit A***). Ms. Traslaviña Garcia was placed into removal proceedings under § 240 of the Immigration and Nationality Act ("INA") (*see* 8 U.S.C. § 1229a); released on personal recognizance; and ordered to appear at an immigration court hearing in Boston on May 27, 2025. Ex. A; Order of Release on Recognizance (a true copy of which is attached hereto at ***Exhibit B***). When CBP released Ms. Traslaviña Garcia, on April 1, 2024, it provided her with an Order of Release on Recognizance notifying her, in pertinent part, that:

> You have been arrested and placed in removal proceedings. In accordance with ***section 236***[1] of the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with [enumerated] conditions[.]

*Id.* (emphasis added). In short, and to be clear, Ms. Traslaviña Garcia was not – at that time or any other – put into expedited removal proceedings under § 235 of the INA.

Ms. Traslaviña Garcia, who is married to a lawful permanent resident of the United States (First Amended Petition for Habeas Corpus ("Am. Pet.") ¶ 1) and since her release by CBP lived with him in Revere, Massachusetts, has never been charged or convicted of a crime in the United States, Columbia, or elsewhere. *See* ICE's Enforce Alien Removal Module (EARM) I-213 Encounter Summary for Ms. Traslaviña Garcia, printed June 12, 2025 ("I-213," a true copy of which is attached hereto at ***Exhibit C***), at 2. From the time DHS released her on personal recognizance more than one year ago, she continued to abide by the law and, specifically, with the requirements of her conditional parole. This is not disputed by the government. On May 14, 2024, she reported to her ICE case officer at the time she was directed in her release paperwork. *See* ICE I-220R receipt (a true copy of which is attached hereto at ***Exhibit D***). She checked in with ICE

---

[1] Section 236 authorizes release upon conditional parole (INA § 236(a)(2)(B); *see* 8 USC § 1226) for persons subject to conventional removal proceedings under Section 240.

again on May 23, 2025, in Burlington, Massachusetts, as she had been directed. *See id; see also*
***Declaration of Crystal Traslaviña Garcia*** ("Traslaviña Garcia Decl.," filed herewith) ¶ 5.

Ms. Traslaviña Garcia also abided by her NTA, faithfully showing up at Boston
Immigration Court on May 27, 2025 for her Master Calendar Hearing. Am Pet. ¶ 2. At that hearing,
at which she appeared without counsel, the Immigration Judge continued her § 240 removal
proceedings, despite counsel representing DHS's Office of the Principal Legal Advisor ("OPLA")
having made an oral motion in the hearing to terminate those proceedings. Am. Pet. ¶¶ 3-4. The
Immigration Judge adjourned the hearing by issuing Ms. Traslaviña Garcia a Hearing Notice,
ordering her to return to Boston Immigration Court on May 12, 2026. *Id.* ¶ 4; *see* Court Notice of
In-Person Hearing (a true copy of which is attached hereto at ***Exhibit E***).[2]

B.     Ms. Traslaviña Garcia's Unlawful Arrest Despite No Changed Circumstances

Upon stepping out of the courtroom on May 27, 2025 where the Immigration Judge had
just ordered Ms. Traslaviña Garcia to remain in § 240 removal proceedings, at least five ICE agents
– none bearing a warrant – swarmed Ms. Traslaviña Garcia in the hallway of the immigration court
and took her into custody. Am. Pet. ¶ 5. As this was occurring, an attorney who had volunteered
to step in and advise Ms. Traslaviña Garcia during the Immigration Judge's hearing was standing
near Ms. Traslaviña Garcia in the hallway. The attorney asked the ICE agents why they were
arresting Ms. Traslaviña Garcia, and an agent responded they were taking her into custody to put
her into expedited removal. *Id.* When the attorney showed the officers the Hearing Notice just

---

[2] As Respondents stated, Ms. Traslaviña Garcia "is still in formal removal proceedings before the Immigration Court
under 8 U.S.C. §1229a." Resp't Opp. at 3. At the time Respondents made this statement, it was true because the
Motion to Dismiss that the Immigration Court granted on or about June 12, 2025, was not final and was the subject of
a Motion for Reconsideration by Ms. Traslaviña Garcia. On June 27, 2025, the Immigration Court ***granted*** Ms.
Traslaviña Garcia's Motion for Reconsideration ***and denied*** DHS's Motion to Dismiss. Order of the Immigration
Judge, dated June 27, 2025 (a true copy of which is attached hereto at ***Exhibit F***). The Immigration Court accordingly
allowed Ms. Traslaviña Garcia's case to proceed under 8 U.S.C. § 1229a & INA § 236, and it granted a continuance
until April 6, 2026 (moved up from prior scheduled date of May 12, 2026). Notice of In-Person Hearing (a true copy
of which is attached hereto at ***Exhibit G***).

issued by the Immigration Judge as proof Ms. Traslaviña Garcia was still in removal proceedings, was therefore not subject to expedited removal, and that to subject her to it would violate the Immigration Judge's order, an ICE agent stated they were under orders to take individuals, including Ms. Traslaviña Garcia, into custody even when the Immigration Judge had not yet ruled to terminate proceedings. *Id.*

Respondents do not and cannot argue there was a change in circumstances pertaining to Ms. Traslaviña Garcia's case that could serve as a valid ground for her arrest or detention on May 27, 2025. In a May 28, 2025 entry on the Form I-213 (Ex. C), ICE made an attempt to explain a qualifying "change in circumstances" in Ms. Traslaviña Garcia's case, but that explanation does not withstand even modest scrutiny. ICE asserted in that document that "[a Deputy Field Office Director] and OPLA Chief Counsel concurred that an arrest was authorized after OPLA entered an oral motion to terminate her immigration proceedings at her scheduled removal hearing." *Id.* at 2. This oral motion from OPLA to terminate, the ICE narrative continues, meant the "'[c]ircumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government.'" *Id., quoting* INA 8 C.F.R. § 239.2(a)(7). What ICE omitted from this next-day explanation – even though its agents were informed directly of this fact as they were arresting Ms. Traslaviña Garcia on May 27 – is that the "OPLA[-]entered oral motion to terminate" ***was denied by the Immigration Judge*** during the hearing. The Immigration Judge's denial of the oral motion to terminate did the opposite of changing the circumstances of the case; it maintained the status quo. Moreover, it would be a strange thing for the law to allow the government to wield a motion it had just lost as a cudgel against the person who won.[3]

---

[3] In their Court filings, Respondents attempt to defend neither this illogical explanation in ICE's May 28 paperwork, nor the ICE agent's statement to Ms. Traslaviña Garcia's volunteer counsel during the May 27 arrest that they were

Adding to its lawlessness, ICE's arrest of Ms. Traslaviña Garcia was a warrantless arrest. The next day, May 28, 2025, ICE filled out an after-the-fact Warrant for Arrest of Alien and a Notice of Custody Determination (true copies of which are attached hereto at ***Exhibit H***). The latter document notified Ms. Traslaviña Garcia that an ICE officer, J. Galluzzo, "[has] determined that, pending a final administrative determination in your case, you ***will be*** … [d]etained by the Department of Homeland Security." *Id.* (emphasis added). Of course, she already had been detained approximately 24 hours before ICE's "Custody Determination." This Notice of Custody Determination also stated that Ms. Traslaviña Garcia's detention was "[p]ursuant to the authority contained in section 236 of the [INA]" – not expedited removal, which falls under § 235 – thus contradicting the reasons the ICE agents gave to Ms. Traslaviña Garcia and the volunteer counsel when they executed their arrest in the courthouse the day prior.

On the evening of her May 27, 2025 arrest, Ms. Traslaviña Garcia commenced this *habeas* action. Within one hour of the filing, this Court issued an Order and Stay of Transfer or Removal which, *inter alia*, restricted Respondents' ability to transfer Ms. Traslaviña Garcia outside of Massachusetts. Am. Pet. ¶ 6.[4] In early June 2025, however, by agreement of the parties, the Court permitted Ms. Traslaviña Garcia to be transferred to ICE's detention facility in South Burlington, Vermont ("Vermont Detention Center"), where she remains in custody. *Id.* ¶ 7.

---

detaining Ms. Traslaviña Garcia in order to put her into expedited removal. Instead, Respondents sidestep any specific explanations for her arrest and detention by saying simply that ICE could arrest her "for any (or no) reason at all" because she "is subject to mandatory detention under 8 U.S.C. 1225(b)(2)(a)." Resp't Opp. at 16. Thankfully, that is not the law. *See infra* at 12-14.

[4] Contrary to Respondents' position, the fact Ms. Traslaviña Garcia still has a pending right to administratively appeal a determination of the Immigration Court that it lacked jurisdiction to consider her bond request does not mean this Court is powerless to act on her habeas petition in the meantime. See *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (district courts have jurisdiction over challenges over "the extent of the Government's detention authority" under the 8 U.S.C. § 1226(a)(2) and 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)). Moreover, exhaustion of administrative remedies is not required prior to a habeas corpus petition seeking release from unlawful detention. *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 457 (D. Mass. 2010); *see also McCarthy v. Madigan*, 503 U.S. 140, 147 (1992) (citing *Gibson v. Berryhill*, 411 U.S. 564, 575, n. 14 (1973) (finding that exhaustion not necessarily required if petitioner challenged an ongoing deprivation of her liberty interest).

C.   Inhumane Conditions and Cruel, Retaliatory Treatment Suffered by Ms. Traslaviña Garcia at ICE's Burlington, Massachusetts Field Office

Ms. Traslaviña Garcia's transfer to the Vermont Detention Center in early June 2025 followed six days and nights of detention in a hold room in ICE's field office located at 1000 District Avenue, Burlington, Massachusetts (the "Massachusetts Field Office"). As detailed in her Am. Pet., ¶ 8 & 18-44, and as further detailed in the Traslaviña Garcia Decl., ¶¶ 7-15, she was subject to inhumane and cruel conditions and treatment at ICE's Massachusetts Field Office.

D.   Conditions at the Vermont Detention Center

Ms. Traslaviña Garcia has been wrongfully imprisoned at the Vermont Detention Center for the past four (4) weeks. While the conditions are not as abysmal as the Massachusetts Field Office, Ms. Traslaviña Garcia still endures suffering from: constant hunger from the meager rations she is offered there; infrequent and inadequate medical care, including for a surgical scar that has not been able to fully heal during her custody and causes her stomach pain; and verbal tirades from a guard. *See id.* ¶¶ 16-24. As Ms. Traslaviña Garcia concludes her Declaration, "I am feeling very depressed. I am desperate to get out of here. I don't know why I am here. I don't understand why I was arrested when I went to court and was doing everything I was ordered to do. I have had panic attacks and anxiety attacks for being here." *Id.* ¶ 25.

**ARGUMENT**

I.   **Ms. Traslaviña Garcia is not subject to expedited removal**

Respondents try to hold expedited removal over Ms. Traslaviña Garcia's head by saying, on the one hand, that ICE has "determined [she] is eligible for" it, Resp't Opp. at 2, but that she "is not being subjected to expedited removal at this time." *Id.* at 3. But Respondents are wrong – Ms. Traslaviña Garcia is not eligible for expedited removal.

She entered the U.S. without inspection and was apprehended and detained by CBP officials. On April 1, 2024, while in CPB custody but prior to being released, she was served

with an NTA. *See* Ex. A. The NTA charges Ms. Traslaviña Garcia as inadmissible to the United States under INA § 212(a)(6)(A)(i), as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.* Ms. Traslaviña Garcia was then released on recognizance pursuant to DHS' authority under INA § 236. *See* Ex. B.

The Government argues that Ms. Traslaviña Garcia is subject to mandatory detention pursuant to 8 U.S.C. 1225(b) because she is an applicant for admission. It is correct that Ms. Traslaviña Garcia is an applicant for admission, given her manner of entry into the United States. However, DHS had the choice to place her in expedited removal proceedings but instead opted to place Ms. Traslaviña Garcia in removal proceedings under INA § 240, 8 USC 1229a. As explained in the Board of Immigration Appeals ("BIA") decision in *Matter of Cabrera-Fernandez*, 28 I&N Dec. 747 (2023):

> For applicants for admission charged as inadmissible, DHS has authority to determine whether to initiate expedited removal proceedings under section 235(b)(1)(A)(i) of the INA, 8 U.S.C. 1225(b)(1)(A)(i), or removal proceedings under section 240 of the INA, 8 USC 1229a. *Matter of E-R-M- & L-R-M-, 25 I&N Dec. 520, 523 (BIA 2011).*

In Ms. Traslaviña Garcia's case, DHS opted to initiate removal proceedings under INA § 240 & 8 USC 1229a. This is clear because, per *Matter of Cabrera-Fernandez*, relying on *Jennings vs. Rodriguez*, 138 S. Ct. 830 (2018), the **sole** mechanism authorizing release of individuals detained for expedited removal is through a grant of humanitarian parole under INA § 212(d)(5)(A). *Matter of Cabrera-Fernandez*, 28 I&N Dec. 747, 748 (2023) (emphasis added). Ms. Traslaviña Garcia, like the Respondents in *Matter of Cabrera-Fernandez*, was released from CBP custody under a grant of conditional parole under § 236, as evidenced by the Order of

Release of Recognizance.[5] Ex. B.

On May 27, 2025, the Immigration Judge denied DHS's Motion to Dismiss these proceedings and allowed her case to proceed under 8 U.S.C. § 1229(a) & INA § 236, granting a continuance until the next court date on April 6, 2026. *See* Exs. F & G. Because immigration proceedings were, and still are, ongoing under the jurisdiction of an immigration judge, Ms. Traslaviña Garcia's arrest was unlawful. On May 28, 2025, after she was wrongfully arrested and detained, DHS served her both a Custody Determination and Arrest Warrant – both of which specify and confirm that Ms. Traslaviña Garcia was detained pursuant to INA § 236. Ex. H. Ms. Traslaviña Garcia thus remains in regular removal proceedings under INA § 240, and her detention and release fall under the rules and regulations of § 236.

The government argues both that ICE has determined that Ms. Traslaviña Garcia is subject to expedited removal (and thus § 235 applies) while also stating that an expedited removal order has not been filed and Ms. Traslaviña Garcia is nonetheless subject to mandatory detention under § 235.  But expedited removal under 8 U.S.C. § 1225 is separate from removal proceedings under 8 U.S.C. § 1229(a), and both statutes and case law indicate that the Attorney General or immigration officer must choose whether to place a noncitizen into expedited removal **or** regular removal proceedings. *See* ***Declaration of Kerry E. Doyle***, ("Doyle Decl.," filed herewith) ¶ 6(d) & (h). The statute distinguishes between the two proceedings, instructing

---

[5] The Respondents incorrectly argue that Ms. Traslaviña Garcia is subject to mandatory detention pursuant to *Matter of Q Li*, 29 I &N Dec. 66 (BIA 2025). However, *Matter of Q Li* does not apply in Ms. Traslaviña Garcia's case because, as detailed above, upon her arrival into the United States, DHS opted to detain her under INA § 236, and not under INA §235. Unlike the respondent in *Matter of Q Li*, who at the time of her arrest at the border was released on parole under INA § 212(d)(5)(A), Ms. Traslaviña Garcia was released on recognizance pursuant to INA § 236. *Id* at 67. As *Matter of Q Li* makes plain, "The only exception permitting the release of aliens detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), is the parole authority provided by section 212(d)(5)(A) of the INA, 8 U.S.C. § 1181(d)(5)(A)." *Id* at 69. Had Ms. Traslaviña Garcia been detained under INA § 235, she would have been subject to mandatory detention and could have only been released pursuant to a grant of humanitarian parole under INA § 212(d)(5)(A), which she was not. *See Matter of Cabrera-Fernandez*, 28 I&N Dec. 747 (BIA 2023).

that those who are not placed into expedited removal proceedings under 8 U.S.C. § 1225(b)(1) will be placed into removal proceedings under 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1225(b)(2), INA § 235(b); *see also* 8 U.S.C. § 1229(a), INA § 240 ("Unless otherwise specified in this chapter, a proceeding under [INA § 240] shall be the sole and exclusive procedure for determining whether [a noncitizen] may be admitted to the United States or, if the [noncitizen] has been so admitted, removed from the United States."). A sister court in the *Las Americas* decision clarified this dichotomy further, distinguishing the rights available to noncitizens in the different proceedings and emphasizing, "...it is clear from the text of the statute that expedited removal proceedings under § 1225(b) are ***not*** "removal proceedings" within the meaning of section 1362 of the INA." *Las Americas Immigrant Advocacy Center v. Wolf*, 507 F. Supp. 3d 1, 28 (D.D.C. 2020).[6]

When a noncitizen who is inadmissible arrives at the border, the immigration officer can decide whether to place that person into expedited removal under 8 U.S.C. § 1225 or regular removal proceedings under 8 U.S.C. § 1229a. *See* Doyle Decl., ¶ 6(d). If placed into expedited removal, the noncitizen does not go in front of an immigration judge and the immigration officer can order the person removed, unless they express a fear of return to their home country. *See A Primer on Expedited Removal*, American Immigration Council (Feb. 5, 2025); *see also* 8 U.S.C. § 1225(b)(1)(A)(i). The Fifth Circuit in the *Flores-Ledezma* decision noted, "expedited removal proceedings are administrative proceedings whereas general removal proceedings are before an

---

[6] The court in *Las Americas* further provides, "[f]urthermore, nowhere in section 1225(b)—the statutory provision governing expedited removal and the credible fear process—does Congress refer to an immigration judge's review of a negative credible fear determination as a "removal proceeding," even though that phrase is otherwise used liberally throughout the INA. Its conspicuous absence in section 1225(b) is plainly indicative of Congress's intent to distinguish expedited removal processes." Available at
www.americanimmigrationcouncil.org/wp-content/uploads/2017/02/a_primer_on_expedited_removal_0225.pdf

immigration judge." *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 379 n. 4 (5th Cir. 2005), citing to INA §§ 238(c)(2), 240. Importantly, once placed into regular removal proceedings, the person's case falls under the jurisdiction of the immigration judge. *See* 8 U.S.C. § 1229. When Ms. Traslaviña Garcia arrived at the border, she was not placed into expedited removal proceedings, even though the immigration officer had the discretion to do so. *See Flores-Ledezma*, 415 F.3d at 379 (finding the Attorney General can exercise discretion in choosing to place a noncitizen in expedited or regular removal proceedings).

Ms. Traslaviña Garcia was placed directly into removal proceedings under 8 U.S.C. § 1229a and served with an NTA. *See* Ex. A. Contrary to Respondents' position that "mandatory detention is warranted under 8 U.S.C. § 1229a," Resp't Opp. at 14, DHS gave her conditional parole and released her on her own recognizance. Once DHS has initiated general removal proceedings by filing an NTA, it is the Immigration Judge's responsibility to adjudicate the respondent's case. *Matter of J-A-B- & I-J-V-A-*, 27 I&N Dec. 168, 170 (BIA 2017), quoting *Matter of W-Y-U-*, 27 I&N Dec. 17, 19 (BIA 2017) ("[t]he role of the Immigration Courts and the Board is to adjudicate whether [a noncitizen] is removable and eligible for relief from removal in cases brought by the DHS."); see also *Matter of Avetisyan*, 25 I&N Dec. 688, 691 (BIA 2012) ("Once the notice to appear is filed with the Immigration Court, jurisdiction over proceedings vests with the Immigration Judge."). Here, DHS had already initiated removal proceedings when they filed the April 1, 2024 NTA with the Boston Immigration Court. Therefore, it is the Immigration Judge's duty to adjudicate her case and determine if she is removable; DHS does not have the authority to now place her in expedited removal proceedings under 8 U.S.C. § 1225 because her case is still under the jurisdiction of the Immigration Judge.

In *Matter of E-R-M- & L-R-M-*, the BIA found that DHS has discretion to put noncitizens who meet the applicable categories under either 8 U.S.C § 1225(b) or 8 U.S.C. §

1229(a) in either expedited removal or removal proceedings, and if placed in removal proceedings, the Immigration Judge has jurisdiction over that noncitizen. *Matter of E-R-M- & L-R-M-*, 25 I&N 520, 523-24 (BIA 2011). Based in part on that finding, the BIA found in an unpublished decision that a noncitizen who was placed directly into removal proceedings under § 1229(a) was thus not subject to mandatory detention under § 1225(b)(1) or (b)(2), because DHS had elected to place them directly into removal proceedings without placing them in expedited removal first. *See* Appeal ID 5454441 (BIA Dec. 14, 2023) (a copy of which is attached hereto at ***Exhibit I***). Ms. Traslaviña Garcia was similarly placed directly into removal proceedings, which continue; thus, in her case, she cannot simultaneously be in regular removal proceedings and subject to detention under § 1225(b). *See* Doyle Decl.

## II.    Ms. Traslaviña Garcia is not Subject to Mandatory Detention: her custody and release are governed by INA § 236 – which does not require detention

DHS argues that Ms. Traslaviña Garcia is subject to mandatory detention under § 235 while in standard INA § 240, 8 USC 1229a proceedings. The government's belief that INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A) applies to Ms. Traslaviña Garcia's detention, after she was released under INA § 236, is simply wrong.

### A.    Every DHS document given to Ms. Traslaviña Garcia states she is subject to § 236, which provides for discretionary, not mandatory, detention

Every document Ms. Traslaviña Garcia has received from the DHS states her custody is determined by § 236, meaning – for the reasons amplified below – mandatory detention does not apply. *See, e.g.*, Ex. B (April 1, 2024 Release on Recognizance) & Ex. H (May 28, 2025 Custody Determination).

### B.    ICE cannot determine Ms. Traslaviña Garcia is subject to mandatory detention absent a violation of the requirements for her release

1.    Ms. Traslaviña Garcia has complied with all of the requirements of her release

Ms. Traslaviña Garcia's terms of release in 2024 state, "You have been arrested and

placed in removal proceedings. In accordance with section 236 of the [INA] …, you are being released on your own recognizance ***provided you comply with the following conditions***." Ex. 2 (emphasis added). Ms. Traslaviña Garcia has complied with all of the requirements. She has attended ICE check-ins, appeared in court, and not violated any state or federal laws. There is no lawful basis to re-arrest her and detain without an opportunity for bond while she is still in immigration proceedings pursuant to INA § 240 & 8 USC 1229a.

      2.    <u>ICE does not have the authority to change the law governing her custody and release from INA § 236, 8 U.S.C. § 1226 to INA § 235(b), 8 U.S.C. § 1225(b)</u>

Ms. Traslaviña Garcia's release from custody under INA § 236 governs, and ICE does not have the authority to change the law governing her detention to INA § 235(b). Whether for the purposes of expedited removal or mandatory detention outside of expedited removal, DHS erroneously expands the grounds of mandatory detention in INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A), by claiming it applies to any "applicant for admission" that has been here less than two years and that ICE determines has not clearly and beyond a doubt showed grounds for admissibility. Under their argument, ICE has the authority to mandatorily detain anyone present in the U.S. for less than two years and who ICE determines does not have a legal pathway to immigration status beyond a reasonable doubt ***even while*** in immigration court proceedings where a judge will adjudicate the claim. Even if that were a valid argument, it could not be applied to Ms. Traslaviña Garcia, as there was no "material change in [petitioner's] circumstances that justified an individualized redetermination or revocation of [petitioner's] parole status." *See Salazar v. Moniz*, Case 1:25-cv-11159-LTS, Order on Motion to Dismiss and Petition for Writ of Habeas Corpus (June 11, 2025), at 13.

     *Vasquez v. Bostock* further distinguishes between detention under § 1225 and § 1226, which governs the apprehension and detention of noncitizens in removal proceedings. The court

in *Vasquez* determined noncitizens present in the U.S. and apprehended and detained pursuant to 8 U.S.C. § 1226 were entered into removal proceedings under 8 U.S.C. § 1229(a) and thus were not subject to mandatory detention under 8 U.S.C. § 1225(b). *Vazquez v. Bostock*, 2025 US Dist. LEXIS 78395, at *32-33 (D. Wash. Apr. 24, 2025). *Vasquez* noted that the Supreme Court in *Jennings* differentiated between 8 U.S.C. § 1225 detention and § 1226 detention by reasoning that § 1225 is part of a process that "generally begins at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." *Vazquez*, 2025 US Dist LEXIS 78395, at *40, citing *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). In contrast, 8 U.S.C. § 1226 governs "the process of arresting and detaining" noncitizens who are living "inside the United States," but who still may be removed, "including noncitizens who were inadmissible at the time of entry." *Vazquez*, 2025 US Dist LEXIS 78395, at *40, citing *Jennings,* 583 U.S. at 288.

Ms. Traslaviña Garcia, as clearly marked on her NTA, is a noncitizen present in the United States. *See* NTA, Ex. 1. Therefore, 8 U.S.C. § 1226 applies and she cannot be subject to mandatory detention and expedited removal under § 1225(b). *Jennings*, 583 U.S. at 287 ("As noted, § 1226 applies to [noncitizens] already present in the United States."); *see also* Appeal ID 5549981 (BIA Oct. 17, 2023), Ex. 8 (finding that because the respondent's NTA marked them as a "[noncitizen] present without admission or parole," they were not subject to the detention provisions under INA § 235(b), 8 U.S.C. § 1225(b)).[7]

## II.    No changes in case circumstances justified Ms. Traslaviña Garcia's arrest

Removal proceedings commence and jurisdiction vests with the Immigration Court

---

[7] Respondents interpret *Matter of Q Li*, 29 I &N Dec. 66 (BIA 2025) as finding that all applicants for admission are subject to mandatory detention under 8 U.S.C. § 1225(b), but the statute does not support DHS' new expansive reading.  *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024); *Matter of Cabrera-Fernandez*, 28 I&N Dec. 747 (BIA 2023) (applying § 236 to those apprehended less than a mile from border and within 40 min. of entry).

under INA § 240 when DHS files the NTA with that court. *See* 8 C.F.R. § 1003.14. Pursuant to the NTA that was served on Ms. Traslaviña Garcia while she was in CBP custody, she was ordered to appear before the Boston Immigration Court on May 27, 2025.  She did so. As discussed above, the OPLA lawyer sought to terminate Ms. Traslaviña Garcia's removal proceedings by oral motion.  However, the Immigration Judge did not grant the government's motion and instead gave Ms. Traslaviña Garcia a new date to appear in 2026. When she departed the courtroom, ICE agents arrested her despite being told that the Immigration Judge had not terminated her removal proceedings. Since those proceedings under § 240 had already commenced, jurisdiction with the Immigration Court had already vested, and proceedings were ongoing; in the absence of any other changed circumstance, her arrest was unlawful.

ICE claimed after the fact in its I-213 that the rejected oral motion to terminate was a sufficient change in case circumstances to warrant re-arrest. But that's untenable and the government has moved away from that particular ICE position. Instead, they now state a position even more wide-ranging in its recklessness: that, in effect, no changes in case circumstances need be shown at all because ICE can arrest and detain a noncitizen for any reason or no reason. This embrace of the unfettered ICE power to deprive noncitizens of their liberty on a whim not only cuts against the agency's own regulations in INA 8 C.F.R. § 239.2(a) and elsewhere, but guts fundamental tenets of due process.

## CONCLUSION

For these reasons and those stated in her Amended Petition, her declaration, and the Doyle Declaration, Ms. Traslaviña Garcia respectfully requests the Court grant her petition and order her released immediately, subject to no new parole conditions beyond those that were in place, and that she was steadfastly abiding by, before ICE's illegal arrest.

15

Respectfully submitted,

**CRYSTAL TRASLAVIÑA GARCIA,**

By her attorney,


/s/ Benjamin B. Tymann
Benjamin B. Tymann
BBO # 652011
Tymann, Davis & Duffy, LLP
45 Bromfield Street, 6th Floor
Boston, MA 02108
Tel. 617.933.9490

Dated: June 30, 2025


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Benjamin B. Tymann
Benjamin B. Tymann

Dated: June 30, 2025